UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JENNIFER J.,[1]                                      )
                                                     )
                    Plaintiff,                       )
                                                     )
            v.                                       )        No. 1:25-cv-01075-MG-JPH
                                                     )
FRANK BISIGNANO Commissioner of The                  )
Social Security Administration,                      )
                                                     )
                    Defendant.                       )

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

On November 10, 2021, Plaintiff Jennifer J. filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning September 29, 2021. [Filing No. 9-2 at 11.] Following denials at the initial and reconsideration levels, Jennifer filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Filing No. 9-2 at 11.] A hearing was held before the ALJ on April 25, 2024. [Filing No. 9-2 at 11.] About a month later, the ALJ issued a decision denying Jennifer benefits, [Filing No. 9-2 at 24], and on April 9, 2025, the Appeals Council denied Jennifer's request for review, [Filing No. 9-2 at 2.] For the reasons that follow, the Court hereby **REVERSES** the ALJ's decision denying Jennifer benefits and **REMANDS** this matter for further consideration.

I.      **Legal Standard**

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 587 U.S. 97, 98 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any

---

[1] To protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security review opinions.

1

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standard, and that substantial evidence exists for the ALJ's decision. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)). In creating a logical bridge, the ALJ must meet the "minimal articulation requirements" when making the decision. *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."); *see Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) (explaining the court reviews the ALJ's decision holistically).

## II.    Factual Background

The ALJ's decision finding Jennifer not disabled followed the required five step evaluation process in 20 C.F.R. § 404.1520. Specifically, the ALJ found:

- At Step One, that Jennifer "ha[d] has not engaged in substantial gainful activity since September 29, 2021, the alleged onset date[.]"

- At Step Two, that Jennifer "ha[d] the following severe impairments: lumbar degenerative disc disease (DDD), fibromyalgia (FM)/systemic lupus erythematous (SLE), right SI joint degenerative joint disease (DJD), bilateral ankle DJD, obesity, depression, attention deficit disorder (ADD), mild cognitive impairment, posttraumatic stress disorder (PTSD)[.]"

- At Step Three, that Jennifer "d[id] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]"

- At Step Three but before Step Four, that Jennifer "ha[d] the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can have no exposure to extreme heat, extreme cold, humidity, wetness, or hazards such as unprotected heights or dangerous machinery. She is able to understand, remember, carry out simple instructions. She is able to sustain attention and/or concentration for 8 hours in the workday on simple tasks. She cannot perform work requiring a specific production rate pace such as assembly line work. She can have occasional interactions with supervisors

3

and coworkers. She can have no interactions with the general public as part of job tasks."

- At Step Four, that Jennifer was "unable to perform any past relevant work[.]"

- And at Step Five, that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]"

[Filing No. 9-2 at 13–24.] For these reasons, the ALJ concluded Jennifer had "not been under a disability, as defined in the Social Security Act, from September 29, 2021, through the date of this decision[.]" [Filing No. 9-2 at 24.]

### III.   Discussion

Jennifer argues the ALJ erred in by failing to properly address (1) Jennifer's moderate limitations in maintaining concentration, persistence, or pace ("CPP") in the RFC assessment and hypothetical to the vocational expert ("VE"); and (2) the factors set forth in SSR 16-3p during the ALJ's subjective symptom evaluation. [Filing No. 13 at 4.] Jennifer's first argument is persuasive.

At the initial review level, state-agency psychologist J. Gange, Ph.D., determined that, among other things, Jennifer was moderately limited in the following: (1) her ability to maintain attention and concentration for extended periods; and (2) her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [Filing No. 9-3 at 10.] Dr. Gange opined that "[t]he totality of evidence in [the] file suggest[ed] that the claimant [was] able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief supervision and interactions with coworkers and work situations; able to deal with changes in a

routine work setting." [Filing No. 9-3 at 11.] At the reconsideration level, state-agency psychologist Donna Unversaw, Ph.D., affirmed Dr. Gange's findings. *See* [Filing No. 9-3 at 24–25.] The ALJ described Dr. Gange's opinion as "persuasive insofar as it indicates that there are indeed limitations in the areas of: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself." [Filing No. 9-2 at 22.]

Concentrating, persisting, or maintaining pace is an area of mental functioning that "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A2, § 12.00(E)(3). The parties focus much of their briefing on the adequacy of the ALJ's RFC assessment as it relates to Jennifer's CPP limitations. To begin, the Court considers whether Dr. Gange and Dr. Unversaw's narrative testimonies adequately encapsulated their checkbox findings. As noted by the Commissioner, an ALJ can adopt a psychologist's narrative testimony without further explanation *if* the narrative testimony encapsulates and is consistent with the checkbox findings. *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021). For support, the Commissioner turns to *Pavlicek v. Saul*, 994 F.3d at 784. In *Pavlicek*, agency consultants rated the claimant as moderately limited in maintaining concentration and working at a constant pace. *Id*. at 783. On appeal, the Seventh Circuit concluded the ALJ committed no error in adopting the consultants' narratives because the narratives remained consistent with the consultants' checkbox findings. *Id*. at 784.

Drawing from *Pavlicek* and other Seventh Circuit cases, the Commissioner argues that the ALJ adequately translated the state psychologists' CPP findings. While there is some factual overlap between *Pavlicek* and the present case, the Commissioner ignores the facts which warrant a departure in the outcome. The psychologists' narratives in *Pavelicek* provided specific intervals

during which the claimant could maintain concentration and described the claimant as capable of performing simple, repetitive tasks at a "consistent pace[.]" *Id.* 780 (recounting the psychologist's narrative, which stated that the claimant "*could pay attention for up to two hours* at a time, and could perform at a *consistent pace* 'particularly if [ ] engaged in [ ] simple, repetitive tasks'") (emphases added). These layered limitations are distinguishable from Dr. Gange and Dr. Unversaw's narratives, which said nothing about Jennifer's ability to maintain concentration *over a specific period of time* and did not describe the pace at which she could work. *See Todd C. v. Frank Bisignano*, No. 1:24-cv-1367, 2025 WL 4354378, at \*4 (S.D. Ind. Sept. 23, 2025) (holding that the ALJ failed to build a logical bridge related to the claimant's CPP limitations because, unlike *Pavlicek*, the ALJ did not discuss the claimant's ability to maintain concentration over a specific period of time). The Commissioner's arguments in support of the ALJ's decision are unavailing, as they are premised on the Commissioner's belief that the state psychologists adequately translated their checkbox findings. They did not. Thus, inconsistencies existed between the narratives and checkbox findings, which the ALJ did not address. *See Donald G. v. Kijakazi*, No. 3:21-cv-164, 2023 WL 2643238, at \*3 (S.D. Ind. Mar. 27, 2023) (remanding the case because the state-agency psychologists' narrative findings were inconsistent with their checkbox findings and the ALJ did not discuss those actual or apparent inconsistencies).

Jennifer also highlights that the ALJ offered no basis for finding that she could maintain concentration for eight hours, an argument for which the Commissioner offers no rebuttal. Jennifer is correct—despite no such suggestion from the agency psychologists or other medical professional, the ALJ concluded that Jennifer was "able to sustain attention and/or concertation for 8 hours in the workday on simple tasks." [Filing No. 9-2 at 17.] At no point in the RFC assessment, or elsewhere in her decision, did the ALJ provide her reasoning or identify medical evidence

supporting this determination.[2] *See Pound v. Comm'r of Soc. Sec.*, No. 3:21-cv-451 JD, 2022 WL 1771766, at *3 (N.D. Ind. June 1, 2022) (noting that it was "unclear how the ALJ reached [a] two-hour restriction" based on the claimant's CPP limitations, and that "[n]either [] state agency consultants, nor seemingly any medical record, offered such an opinion."); *cf Baldwin v. Berryhill, 746 F. App'x 580, 584 (7th Cir. 2018)* (ALJ did not err by ignoring a psychological evaluation indicating that the claimant was moderately limited in concentration and pace because the psychologist explained in that same report that the claimant had the concentration and pace "necessary to fulfill a normal workday").

The Court now turns to Jennifer's argument the ALJ did not discuss Dr. Grange and Dr. Unversaw's moderate ratings in Jennifer's ability to complete a normal workday/workweek without psychological interruptions and without an unreasonable number and length of rest periods. This Court confronted a similar issue in *Kathy H.*, No. 1:20-cv-2721, 2022 WL 855005 (S.D. Ind. Mar. 22, 2022). There, the state-agency consultants rated the claimant as "moderately limited in completing a workday or workweek without psychologically based symptoms and in working at a consistent pace without an unreasonable number and length of rest periods." *Id.* at *6. The ALJ in *Kathy H.* found the state consultants' opinions to be persuasive and adopted their mental limitations in the RFC. *Id.* at *6. Although the RFC addressed some of the limitations in the area of concentration, the ALJ did not account for the moderate time-off-task limitations that were reflected in the consultants' checkboxes. *Id.* The claimant challenged this omission, and the Court agreed that medical evidence, including worksheet observations, cannot just be ignored. *Id.* While an ALJ "may reasonably rely on a state agency consultant's narrative 'when it is in fact consistent

---

[2] It is unclear to the Court what medical evidence supports this conclusion. Jennifer estimated at the hearing she could concentrate for 6 hours. [Filing No. 9-2 at 16.]

with' the consultant's checklist ratings[,]" in *Kathy H.*, the "state psychologists' narratives [were] inconsistent with the checkbox moderate limitation for time-off-task because the narrative ma[de] no mention of any limitations in that area." *Id.* at *7. Ultimately, the ALJ "could have articulated why she did not find a time-off-task limitation [] appropriate with citation to medical evidence . . . [but] did not do so." *Id.*

Here, like in *Kathy H.*, the ALJ included *some* limitation in the area of concentration but failed to account for the moderate time-off-task limitations reflected in the psychologists' checkboxes. 2022 WL 855005 at *7. Dr. Gange rated Jennifer was moderately limited in her ability to complete a normal workday without psychological interruptions and without an unreasonable number and length of rest periods, [Filing No. 9-3 at 10], a finding which Dr. Unversaw reiterated in her report. [Filing No. 9-3 at 24.] However, neither psychologists' narrative mentioned any limitations for time-off-task, and the ALJ did not address this checkbox evidence in her decision. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (recognizing that an ALJ may rely on a doctor's narrative explanation insofar as the narrative accounts for the checkbox limitations). Notwithstanding this omission, the record reflects that the ALJ recognized that Jennifer's impairments might pose some time-off-task limitations. During the hearing, the ALJ asked the VE for her opinion on whether off-task time would be tolerated for the types of work Jennifer could perform. [Filing No. 9-2 at 54.] The VE testified that "no more than 10 percent" of off-task time would be tolerated. [Filing No. 9-2 at 64.]

While an ALJ "is not bound to any hypothetical," here, the ALJ seemingly considered "the issue of off-task time, but [] failed to provide any analysis of whether . . . [Jennifer] was limited by any off-task allowances and, if[] so, for how long." *Jacob D. v. Kijakazi*, 2021 WL 3674610, at *5 (N.D. Ill. Aug. 19, 2021); *see William W. v. O'Malley*, No. 1:22-cv-2430, 2024 WL 548831, at

*9 (S.D. Ind. Feb. 12, 2024), *report and recommendation adopted*, No. 1:22-cv-02430, 2024 WL 837563 (S.D. Ind. Feb. 28, 2024) (noting that the ALJ appeared to have considered the issue of off-task time by posing a hypothetical to the VE, but had failed to provide analysis of whether the claimant was limited in the RFC analysis). Had the ALJ concluded that off-task allowances were unwarranted, she could have articulated her reasoning with citation to medial evidence. *Kathy H.*, 2022 WL 855005, at *7. But again, like in *Kathy H.*, the ALJ did not do so. *Id.*; *also see Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) (noting that checkbox limitations are medical evidence "which cannot just be ignored"). For this reason, there is no logical bridge to support any conclusion regarding off-task time.

One last observation is worth noting. As previously stated, Dr. Gange and Dr. Unversaw opined that Jennifer was "able to make judgments commensurate with functions of simple, repetitive tasks[.]" [Filing No. 9-3 at 11, 24–25.] The ALJ appears to have accounted for this finding by including in the RFC assessment that Jennifer could "sustain attention and/or concentration for 8 hours in the workday *on simple tasks*." [Filing No. 9-2 at 17] (emphases added). "Simple tasks" refer to "unskilled work," meaning tasks that that are not complex and do not take long to learn. *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020); *Varga*, 794 F.3d at 814; 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time[,]" usually within 30 days). In her decision, the ALJ reasoned that the record supported limiting Jennifer "to performing simple tasks with no paced production work." [Filing No. 9-2 at 22.] This attempt to account for Jennifer's CPP limitations misses the mark, as "the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task . . ." *Martin*, 950 F.3d at 373. The Seventh Circuit has "repeatedly cautioned . . . [that] 'someone with problems concentrating might not be able to

9

complete a task consistently over the course of a workday, no matter how simple it may be.'" *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (quoting *Martin*, 950 F.3d at 373–74 (collecting cases)).

Additionally, the agency psychologists qualified "tasks" with not only "simple," but "repetitive," a term omitted from the ALJ's RFC. [Filing No. 9-3 at 11.] On remand, the ALJ should explain why she did not limit Jennifer to repetitive tasks despite the agency psychologists having recommended that limitation. *William B. v. Bisignano*, No. 1:25-cv-00383, 2025 WL 3166190, at *6 (S.D. Ind. Nov. 12, 2025); *cf Langley v. O'Malley*, No. 22-3008, 2024 WL 3649021, at *4 (7th Cir. Aug. 5, 2024) (holding that an RFC's deviation from a doctor's opinion was not error where the RFC included *more* limiting language and only "minimally departed" from the doctor's assessment).

In sum, remand is appropriate so that the ALJ can (1) consider the inconsistencies between the agency psychologists' narratives and checkbox limitations concerning Jennifer's CPP limitations; (2) explain her reasoning, with citation to medical evidence, for either including or excluding limitations based on these CPP checkbox findings; (3) determine whether there is medical evidence to support that Jennifer can sustain attention and concentration for eight hours; and (4) decide whether off-task limitations are appropriate, and if they are not, fill in the gaps in her logic which she failed to detail in her decision.

Because the Court is recommending that this case be remanded, it need not address Jennifer's remaining arguments, though she may raise those arguments before the ALJ.

**IV.    Conclusion**

For the reasons detailed herein, the Court hereby **REVERSES** the ALJ's decision denying Jennifer benefits and **REMANDS** this matter for further consideration. Final judgment will issue accordingly.

Date: 7/10/2026

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution**:

Jay Hinsley
SSA-Ogc
jay.hinsley@ssa.gov

Kirsten Elaine Wold
Hankey Marks & Crider
kwold@hankeylaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov